UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

    Pick-Your-Own, Inc.,                         Bankruptcy Case No. 19-20821-PRW
                                                   Chapter 11
                          Debtor.

_____

## DECISION AND ORDER
## DENYING MOTION TO EXTEND AUTOMATIC STAY
## TO A NON-DEBTOR GUARANTOR AND
## DENYING REQUEST FOR INJUNCTION UNDER 11 U.S.C. § 105(a)

PAUL R. WARREN, U.S.B.J.

      When filed, this chapter 11 case appeared to be an effort to reorganize the business of a decades-old apple orchard. But, after the passage of three months since the petition was filed, this chapter 11 case is beginning to look as though it was really filed to obtain a litigation advantage in a two-party dispute that was being litigated in state court before this case was filed. And that two-party dispute pits a son (Bejan) against his father (Munir).[1] Neither Bejan nor Munir are debtors in bankruptcy proceedings. The Debtor is a corporation owned by Bejan. The business of the Debtor appears to be limited to renting its 140 acre orchard to another corporation owned by Bejan. Although the automatic stay protects the Debtor from continuation of the state court litigation, it does not protect Bejan. So, the Debtor has moved to extend the automatic stay to prevent Munir from continuing with this state court counterclaim against Bejan. While the Debtor mentions extending the stay to the non-debtor under 11 U.S.C. § 362, the real crux of the

---

[1]     Because the last names of the combatants are (unsurprisingly) the same, the Court will use the individuals' first names for the sake of clarity.

motion is based on 11 U.S.C. § 105(a). (ECF No. 55). Munir opposes the motion, seeking to continue to press his claim against Bejan, personally, in the state court action. (ECF Nos. 63 & 74). Based on the record before the Court, the Debtor's motion is **DENIED**.

I.

JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

II.

FACTS

The Debtor owns a 140 acre apple orchard in Victor, NY worth $575,000. (ECF No. 12, Sch. A/B, Part 9, No. 55). The property is encumbered by two fairly small mortgages, totaling $175,000. (*Id.* at Sch. D, Part 1). The Debtor does not operate the orchard. Instead, the Debtor rents the land to "The Victor Apple Farm," a corporation owned by Bejan. (*Id.* at Sch. G, No. 2.1). The Debtor's "business" of leasing the land is in exchange for annual rent of $30,486.84, paid in 5 monthly installments of $6,097.36. (*Id.* at Sch. G, Attachment 1). The Debtor's largest (by far) and only significant unsecured debt is for an $800,000 promissory note owed to Munir. (*Id.* at Sch. E/F, Part 2, No. 3.3). That obligation arose from a 2017 transaction in which Bejan purchased all the shares of stock in the Debtor from Munir. (ECF No. 63, Part 2 ¶¶ 5-6). Bejan is the sole shareholder of the Debtor and guarantor of the Debtor's obligation to Munir under a stock pledge agreement. (ECF No. 55 ¶ 3).

Sometime prior to the filing of this chapter 11 case, Bejan and the Debtor started an action against Munir in state court. Munir filed a counterclaim against the Debtor and Bejan, seeking to enforce his guarantee of the Debtor's obligation. (*Id.* ¶¶ 1, 3). Seemingly, in response to the counterclaim, the Debtor filed this chapter 11 case. Munir seeks to proceed with the state court litigation against only Bejan, making clear Munir's intention to honor the automatic stay as to the Debtor corporation. (ECF No. 63, Part 2, Ex. A). The Debtor seeks to prevent that from happening, by requesting that this Court extend the automatic stay to protect Bejan.[2]

### III.

### ISSUE

The questions are, on the record before the Court: (1) Whether the Debtor has established that the litigation against Bejan would in fact have an immediate and adverse economic consequence for the Debtor's estate; or (2) Whether the estate is likely to suffer imminent and irreparable harm in the absence of preliminary relief. The answer to each question is no.

### IV.

### DISCUSSION

"There is no question that a bankruptcy petition ordinarily stays litigation against the filing entity and not against principals or affiliates. On the other hand, there is also no question that courts have, under § 105 of the Bankruptcy Code, extended the automatic stay to principals

---

[2] The Debtor also requests injunctive relief (described as a permanent injunction in the Debtor's proposed order). (ECF No. 55, Ex. A). The request for injunctive relief is procedurally flawed and, therefore, not properly before the Court for consideration. *See* Rule 7001(7) FRBP.

3

Case 2-19-20821-PRW, Doc 84, Filed 11/21/19, Entered 11/21/19 15:21:56, Description: Main Document , Page 3 of 8

and affiliates of a debtor." *In re Capitale Ventures I, LLC*, No. 14-11984 (ALG), 2014 Bankr. LEXIS 3099, at *2 (Bankr. S.D.N.Y. July 21, 2014) (internal citations omitted). The Second Circuit has declined to decide the standard for obtaining a preliminary injunction under § 105(a), describing the issue as one of apparent first impression. *Picard v. Fairfield Greenwich, Ltd*, 762 F.3d 199, 211-12 (2d Cir. 2014). However, the Second Circuit held that the movant must be capable of "establishing either that the [state court action] would in fact have an immediate adverse economic consequence for the [debtor's] estate, or that the estate is likely to suffer irreparable harm in the absence of preliminary relief." *Id.* at 212 (quoting *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003) for the first proposition and *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) for the second proposition) (internal quotation marks omitted). And, the Second Circuit cautioned: "But it is an extraordinary exercise of discretion to use [section 105] to stay a third party action not involving the debtor, and the mere possibility that a third-party action will have some effect on a debtor's estate is not enough to satisfy either the *Queenie* or *Winter* standards." *Picard*, 762 F.3d at 213 (internal citations and quotation marks omitted).

      Here, the Debtor argues that because Bejan is the sole principal and guarantor of the Debtor's obligation to Munir, continued litigation against Bejan "seriously risks the Debtor's ability to reorganize." (ECF No. 55 ¶ 7). But, how? The Debtor does not offer a shred of evidence to support its argument. The mere prospect of harm to the Debtor is not enough—the Debtor must show harm to be "likely" and not merely "possible." *Id.* at 213. *See also In re SDNY 19 Mad Park, LLC*, No. 14-11055 (ALG), 2014 Bankr. LEXIS 3877, at *4 (Bankr. S.D.N.Y. Sept. 11, 2014); *In re Capitale Ventures I, LLC*, 2014 Bankr. LEXIS 3099, at *4.

4

Not only does the Debtor fail to show how any harm to the estate is "likely," the Debtor doesn't even show how harm to the estate is "possible"—the Debtor just says it is. The Second Circuit has been quite clear: "[T]he mere possibility that a third-party action will have some effect on a debtor's estate is not enough to satisfy either the *Queenie* or *Winter* standards." *Picard*, 762 F.3d at 213. The Second Circuit requires proof that actions taken against non-debtor third parties are "legally certain to impact estate property," not "only factually likely" to do so. *Id.* at 208. Under the *Queenie* standard, the Debtor's motion fails, because the Debtor has failed to demonstrate that the state court action would work an immediate economic harm upon the Debtor's estate.

So, the Debtor is left with seeking a preliminary injunction under § 105(a) of the Code. And that avenue seems to be the real focus of the motion—perhaps "attempted focus" might better describe the motion.[3] According to the Debtor, a party seeking injunctive relief under § 105(a) need not show irreparable harm if the liability of the non-debtor will be imputed to the debtor by operation of law. (ECF No. 55, Part 2 at unnumbered page 3). The Debtor offers no citation of authority for that legal proposition nor does the Debtor offer a single fact to demonstrate that proposition to be "legally certain" to impact estate property. *Picard*, 762 F.3d at 208.

While the Second Circuit in *Picard* declined to decide whether a request for injunctive relief under § 105(a) is governed by the traditional injunction standard—focusing instead on the absence of proof of an "immediate adverse economic consequence for the debtor's estate," *Picard*, 762 F.3d at 213,—lower courts in the Second Circuit have repeatedly held that the

---

[3] Again, Rule 7001(7) FRBP provides that the relief sought by the Debtor must be procedurally brought by adversary proceeding. In disposing of the motion, the Court is not condoning this procedural gaffe.

5

Case 2-19-20821-PRW, Doc 84, Filed 11/21/19, Entered 11/21/19 15:21:56, Description: Main Document , Page 5 of 8

"preliminary injunction standard" does apply to stays of proceedings, against non-debtors, issued under § 105(a) of the Code. *See Manchester CP v. Konstantinou*, No. 2:17-cv-9, 2017 U.S. Dist. LEXIS 189534 (Vt. Nov. 16, 2017); *In re SDNY 19 Mad Park, LLC*, No. 14-11055 (ALG), 2014 Bankr. LEXIS 3877 (Bankr. S.D.N.Y. Sept. 11, 2014); *In re Capitale Ventures I, LLC*, No. 14-11984 (ALG), 2014 Bankr. LEXIS 3099 (Bankr. S.D.N.Y. July 21, 2014). In holding that "the usual preliminary injunction standard" applies to stays of proceedings against non-debtors under § 105(a), the Ninth Circuit observed that "[t]he majority of circuits that have reviewed injunctions staying actions against non-debtors have applied the usual preliminary injunction standard." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1094 (9th Cir. 2007) (citations to other circuit courts omitted).

> "[T]he test for issuance of a § 105 injunction is best stated as follows:
>
>> The first requirement is that there be danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize. Second, there must be a reasonable likelihood of a successful reorganization. Third, the court must balance the relative harm as between the debtor and the creditor who would be restrained. Fourth, the court must consider the public interest; this requires a balancing of the public interest in successful bankruptcy reorganizations with competing societal interests."

*In re Capitale Ventures I, LLC*, 2014 Bankr. LEXIS 3099, at *4 (quoting *In re United Health Care Org.*, 210 B.R. 228, 233 (Bankr. S.D.N.Y. 1997) (quoting 2 *Collier on Bankruptcy* ¶ 105.02[2] at 105-13 (15th ed. 1997))). *See also In re SDNY 19 Mad Park, LLC*, 2014 Bankr. LEXIS 3877, at *7.

Here, the Debtor has not made the necessary showings traditionally required for injunctive relief to be granted under § 105(a) of the Code. The Debtor has failed to show (or even allege) danger of imminent, irreparable harm. In fact, the Debtor affirmatively asserts that no such showing is required. (ECF No. 55, Part 2 at 3). The Debtor has failed to show (or even

allege) the likelihood of a successful reorganization.[4]  The Debtor has failed to show (or even allege) that the balance of harm tilts in its favor.  And, finally, the Debtor has not shown (or even alleged) that the public interest favors a stay protecting the non-debtor guarantor, Bejan.[5]

The Debtor has failed to carry its burden of proof to demonstrate that the continued litigation against Bejan, a non-debtor, is legally certain to have an adverse impact on property of the estate.  Additionally, the Debtor has failed to carry its burden of proof to demonstrate that issuance of an injunction under § 105(a) of the Code is warranted, under the traditional preliminary injunction standard.  By bringing this motion, the Debtor may have inadvertently pointed to the possibility that this chapter 11 case might have been filed as a litigation tactic, to gain the upper-hand in a state court dispute between a father and his son, and not as a serious attempt to reorganize a struggling business.  With the window for exclusivity under 11 U.S.C. § 1121(b) scheduled to close in the near future, the question as to whether the Debtor has a realistic prospect of reorganizing will soon be front and center.  Accordingly, under 11 U.S.C. §§ 1121 and 105(a), the Debtor is Ordered to file a disclosure statement and chapter 11 plan no

---

[4]  The problems for the Debtor in proposing a viable chapter 11 plan, as detailed by Munir in his supplemental opposition, should be of great concern to the Debtor. (ECF No. 74 ¶ 4).  It is unclear how the Debtor hopes to meet the confirmation requirements without the consent of Munir.

[5]  A word about the public interest component here.  Debtor's counsel was appointed by this Court to represent the chapter 11 Debtor.  Counsel owes his duty of loyalty to the Debtor, not Bejan.  It appears, however, that counsel may be attempting to represent the Debtor's principal, Bejan, whose interest may not necessarily be identical to the Debtor's.  Further, presumably at the direction of Bejan, the Debtor appears to be about to institute an eviction proceeding to dispossess Munir from his residence, due to approximately $22,000 in past-due rent.  Might the state court view the $800,000 debt owed by the Debtor to Munir as an offset?  Might this litigation tactic prove problematic when soliciting creditor votes on a chapter 11 plan?  The Court requests that the UST review with counsel his obligation of loyalty to the Debtor and advise the Court if the UST has concerns in that regard.

later than the statutory deadline when exclusivity will expire in this case; that date being December 18, 2019. The Debtor's recently filed request for a 90-day extension of exclusivity (ECF No. 76) is **DENIED**, in the exercise of the Court's discretion, under 11 U.S.C. § 1121(d)(1), as the Debtor has failed to demonstrate sufficient cause to extend that deadline.

**V.**

**CONCLUSION**

On the record before the Court, the Debtor's motion is **DENIED**.

**IT IS SO ORDERED.**

DATED: November 21, 2019 _____/s/_____
       Rochester, New York          HON. PAUL R. WARREN
                                       United States Bankruptcy Judge